IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KATHERINE DIEBOLD, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PAYLOCITY CORPORATION,**<br><br>**Defendant.** | **Judge**<br><br>**Case No.** |

## COMPLAINT

Plaintiff Katherine Diebold ("Plaintiff"), individually and on behalf of all others similarly situated, known and unknown, through her attorneys, for her Complaint against Paylocity Corporation ("Paylocity" or "Defendant"), states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this case against Paylocity to recover unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid overtime wages, interest, reasonable attorneys' fees and costs under Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/1, *et seq.* (hereinafter, "IMWL").

2. Defendant is an online payroll company headquartered in Schaumburg, Illinois. Plaintiff and other similarly situated employees were hired by Defendant to assist its clients with its payroll services.

3. Plaintiff and others similarly situated worked for Defendant under the job title of

1

Implementation Consultant and were categorized as either a level I or level II Consultant. Defendant failed to properly pay its level II Consultants all owed overtime pay.

4. Although Implementation Consultant Is were classified as hourly employees and received overtime wages, Defendant misclassified Implementation Consultant IIs as salaried employees for the purpose of not paying them overtime.

5. Category I Consultants and category II Consultants performed the same duties.

6. Plaintiff's and other Implementation Consultant IIs' duties did not exempt them from the overtime requirements. By classifying them as exempt, Defendant evaded the payment of wages mandated by the FLSA and the IMWL.

7. Plaintiff brings her FLSA claim as a collective action under 29 U.S.C. § 216(b). Plaintiff's consent form to act as a representative Plaintiff under the FLSA is attached hereto as Exhibit A. Plaintiff brings her IMWL overtime claim as a class action pursuant to Fed. R. Civ. P. 23.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, as this action is brought under the FLSA, 29 U.S.C. § 201, *et seq.*

9. This Court has supplemental jurisdiction over Plaintiff's IMWL claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391(a)(1).

## PARTIES

11. Plaintiff resides in and is domiciled within this judicial district.

12. Defendant maintains its corporate headquarters in Schaumburg, Illinois.

13. Defendant conducts business throughout the United States and has offices in

Illinois, New York, California, New Jersey, Idaho, New Hampshire and Florida.

14. Defendant is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1)(A).

15. At all times relevant hereto, Defendant's annual gross volume of sales made or business done has exceeded $500,000 per year, exclusive of excise taxes.

16. At all times revelant to this Complaint, Defendant has been Plaintiff's "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d) and 820 ILCS 105/3 of the IMWL.

17. From approximately 2015 to September of 2018, Plaintiff was employed by Defendant.

18. Plaintiff worked for Defendant as a Sales Administrator, Implementation Consultant I and Implementation Consultant II.

19. During her employment with Defendant, Plaintiff worked from Defendant's office in Schaumburg, Illinois and remotely from her home.

20. During the relevant period, Plaintiff was Defendant's "employee" as defined by the FLSA, 29 U.S.C. § 203(e)(1) and 820 ILCS 105/3(d) of the IMWL.

21. At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiff and other similarly situated employees.

22. Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiff and others similarly situated.

23. Defendant possessed and exercised the authority to determine the hours worked by Plaintiff and others similarly situated.

24. Defendant had the power and authority to control the nature of the duties performed by Plaintiff and other similarly situated employees.

25. Plaintiff and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

26. Defendant made all decisions relating to Plaintiff's and other similarly situated employees' rates and methods of pay.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

27. Defendant offers a variety of human resources software and services designed to meet its clients' payroll and benefits needs.

28. To assist its clients with the implementation of their software and services, Defendant hired Plaintiff and other similarly situated employees to work as Implementation Consultants. Defendant's Consultants were categorized as either level I or level II employees.

29. Plaintiff worked for Defendant as an Implementation Consultant I and an Implementation Consultant II.

30. Defendant classified employees in the Implementation Consultant I position as non-exempt hourly employees who were eligible to receive overtime wages.

31. Defendant classified employees in the Implementation Consultant II position as exempt salaried employees who were not eligible to receive overtime wages.

32. There was no distinction in the duties performed by Defendant's Implementation Consultant Is and Implementation Consultant IIs.

33. Defendant's Implementation Consultants IIs were responsible for the same work as Implementation Consultant Is. Implementation Consultant Is and IIs were all primarily responsible

4

for communicating with Defendant's clients. The only difference was that Implementation Consultant Is were assigned clients whose businesses had a lower annual revenue than the clients assigned to category II Consultants.

34. Regardless of their particular category, Defendant's Implementation Consultants had to follow the same process in regard to contacting Defendant's clients. After Implementation Consultants were assigned a new client, they were required to schedule an introductory call. This call would typically last for approximately an hour.

35. After the introductory call, Plaintiff and other Implementation Consultants were required to schedule and conduct an alignment call for purposes of providing their assigned clients with status updates.

36. From then on, Plaintiff and other Implementation Consultants were responsible for having weekly meetings with their clients via the telephone. These meetings centered on providing additional updates regarding a client's products.

37. In addition to these weekly calls, Defendant's clients would continue to contact their assigned Implementation Consultant throughout the week. It was common for Defendant's clients to have multiple inquires. Defendant mandated its Implementation Consultants to respond to all client inquiries promptly.

38. Plaintiff and other Implementation Consultants were supposed to only be assigned ten (10) to twenty (20) clients at a given time. However, in reality, Plaintiff and other Implementation Consultants were responsible for significantly more clients. This had the direct effect of increasing their workload.

39. Due to their increased workload, Plaintiff and other Implementation Consultants spent most of their day on the phone with clients or responding to client emails. The focus of their

workday was always customer service.

40. In addition to customer service, Plaintiff and other Implementation Consultants were also responsible for loading employee data specific to each of their client's accounts into Defendant's database. This work primarily consisted of entering payroll data or similar information into a template document.

41. Plaintiff and other Implementation Consultants had to ensure that this information was properly loaded into the template. They had to manually check that all data regarding each client's products or services was entered correctly.

42. Each task that Implementation Consultants completed was subject to automatic system audits by their Team Leads or another supervisory official. It was routine for these audits to occur on a daily basis.

43. In addition to these audits, Team Leads or another managing official would also routinely run reports generated through Defendant's software that were for the purpose of checking to see if Plaintiff and other Implementation Consultants properly completed their tasks. There were checks and balances aligned with all of the duties that Defendant's Implementation Consultants performed.

44. While performing their duties, Plaintiff and other Implementation Consultants did not require any specialized training or advanced knowledge. This was true regardless of whether they were categorized as a category I or category II Implementation Consultant.

45. Regardless of their particular classification, the tasks performed by Defendant's Implementation Consultants were all basic in nature. They did not have any true decision-making authority.

46. Plaintiff and other Implementation I and Implementation II Consultants did not

perform any analysis.

47. Defendant's Implementation Consultants lacked discretion altogether; the performance of their duties did not require independent judgement.

48. In their roles as Implementation I and Implementation II Consultants, Plaintiff and other similarly situated employees did not have any input regarding the manner in which their tasks were completed.

49. Plaintiff and others similarly situated satisfied the requirements of their positions and adequately performed their tasks to benefit Defendant.

50. From approximately May 2017 to June 2018, Plaintiff held the position of Implementation Consultant I. During this period, Plaintiff was paid an hourly rate of approximately nineteen dollars and twenty-three cents ($19.23).

51. Defendant's other level I Consultants were paid similar hourly rates.

52. From approximately June 2018 to September 2018, Plaintiff held the position of Implementation Consultant II. For her work as a level II Consultant, Plaintiff was paid an annual salary of approximately fifty thousand dollars ($50,000). Other level II Consultants were paid similar salaries.

53. Plaintiff and other Implementation Consultant IIs received bi-weekly salaries that remained unchanged regardless of the number of hours they worked each week.

54. Plaintiff and other Implementation Consultant IIs were scheduled to work (40) hours each week, Monday through Friday. They were scheduled to work eight (8) hour each day. However, due to Plaintiff's heavy workload, Plaintiff worked more than forty (40) hours in one or more individual work weeks. Other Implementation Consultant IIs also worked more than forty (40) hours in one or more individual work weeks.

55. Each day, Plaintiff and other Implementation Consultant IIs were scheduled to have back-to-back calls with clients. They also spent a lot of time corresponding with clients throughout their day.

56. Because Plaintiff and other Implementation Consultant IIs spent most of their work day communicating with clients, they were often prevented from completing their other tasks during regular business hours. Consequently, they were required to complete these tasks both before and after their scheduled shifts. Having to complete tasks during periods when they were not scheduled to work routinely resulted in Plaintiff and other Implementation Consultant IIs having to work overtime.

57. The substantial amount of time that it took for Plaintiff and other Implementation Consultant IIs to complete their data entry assignments also contributed to them having to work overtime regularly. There were large quantities of data that had to be inputted into each of their client's accounts.

58. Having to set up client meetings and input client notes were other time-consuming tasks that Plaintiff and other Implementation Consultant IIs had to complete. The sheer volume of these tasks required them to work overtime.

59. Understaffing also contributed to Plaintiff and other level II Consultants having to work overtime. Defendant persistently failed to provide an adequate number of personnel to meet the demands of its business. These conditions forced Plaintiff and other Implementation Consultant IIs to have to work before and after their scheduled shifts to ensure that they finished their work.

60. Working overtime was integral to Plaintiff's and other Implementation Consultant IIs' employment. They consistently worked anywhere from fifty-five (55) to sixty-five (65) hours each week. There were times when they worked even more.

61. Plaintiff and Defendant's other Implementation Consultants IIs should have received overtime ("time-and a-half") wages each week they worked over forty (40) hours. However, they were denied overtime wages altogether.

62. Defendant willfully misclassified Plaintiff and other Implementation Consultant IIs as salaried employees to avoid paying them overtime wages.

63. Plaintiff and other level II Consultants were not exempt from the overtime provisions of the FLSA or the IMWL.

64. Defendant was aware that Plaintiff and other Implementation Consultant IIs had to work over forty (40) hours each week in order to complete their assigned tasks.

65. Defendant was aware that the nature of the tasks performed by Plaintiff and other Implementation Consultant IIs entitled them to overtime wages.

66. In bad faith, Defendant suffered, permitted and/or required Plaintiff and other level II Consultants to work these overtime hours without being compensated.

## FLSA COLLECTIVE ACTION FACTUAL ALLEGATIONS

67. Plaintiff and all those similarly situated employees worked as Implementation Consultant IIs (or in other positions with similar job duties) for Defendant.

68. As Implementation Consultant IIs, Plaintiff and the FLSA collective are or were employed by Defendant within the meaning of the FLSA.

69. Plaintiff and other Implementation Consultant IIs were all paid a salary.

70. The proposed FLSA collective class is defined as:

> All persons who work or worked as salaried Implementation Consultant IIs, or in other positions with similar job duties for Defendant, at any time during the last three (3) years prior to the filing of this Complaint through the entry of judgment (the "FLSA collective").

9

71. At all times relevant to this Complaint, Plaintiff and other members of the FLSA collective worked as non-exempt employees eligible for overtime pay.

72. The duties assigned to Plaintiff and other similarly situated employees do not satisfy the duties tests contained within any of the exemptions specified in the FLSA.

73. Defendant operated under a common policy of suffering, permitting and/or requiring Plaintiff and the FLSA collective to work unpaid overtime hours.

74. Defendant knew, or should have known, that Plaintiff and the FLSA collective routinely worked unpaid overtime hours.

75. Defendant imposed time limits and caseload requirements that resulted in Plaintiff and the FLSA collective to work excessive hours.

76. Plaintiff and the FLSA collective regularly worked over forty (40) hours per workweek to meet Defendant's production requirements.

77. Defendant failed to pay Plaintiff and the FLSA collective for the overtime hours they worked.

78. Defendant's unlawful conduct was widespread, repetitious and consistent, affecting Plaintiff and all members of the FLSA collective equally.

79. Defendant's conduct was willful and in bad faith.

80. Defendant's conduct has caused significant damages to Plaintiff and the FLSA collective.

81. Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA collective.

82. There are numerous similarly situated current and former employees of Defendant who have been denied proper overtime compensation, in violation of the FLSA.

83. These similarly situated employees would benefit from the issuance of court-supervised notice of this lawsuit for purposes of being informed of their opportunity to join.

84. Notice of this action should be sent to all similarly situated Implementation Consultant IIs.

85. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

### CLASS ACTION ALLEGATIONS UNDER ILLINOIS MINIMUM WAGE LAW

86. Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and other current and former employees who worked for Defendant as Implementation Consultant IIs in Illinois.

87. The class Plaintiff seeks to represent is defined as:

> All individuals who are or were employed by Defendant as salaried "Implementation Consultant IIs," and/or in similar positions in the state of Illinois, and who have been denied overtime compensation as required by the respective state labor laws and implementing regulations at any time within three (3) years prior to the filing date of this action through the date of final disposition (the "proposed class").

88. The proposed class is so numerous that joinder of all members is impracticable. During the relevant period, Defendant employed dozens of Implementation Consultant IIs in the state of Illinois.

89. The claims of the named Plaintiff are typical to the members of the proposed class. The named Plaintiff and those similarly situated regularly worked more than forty (40) hours per week and were denied overtime compensation. Each member of the class was paid a salary that remained unchanged, regardless of the number of hours they worked each week. As a result, each and every class member suffered the same harm.

90. Each class member's claim is controlled by Illinois's wage and hour statutory

scheme and one set of facts. Pursuant Fed. R. Civ. P. 23(b)(3), questions of law and fact are common to the class and predominate over any individual questions. Such common questions of law and fact include, but are not limited to, whether the Rule 23 Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime; and whether Defendant violated IMWL by failing to pay Plaintiff and the class overtime compensation for hours worked in excess of forty (40) hours per workweek.

91. Pursuant to Fed. R. Civ. P. 23(b)(1)(A), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources and incentives to prosecute separate lawsuits against their employer. The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting hundreds of identical, individual lawsuits would not promote judicial efficiency or equity, nor result in consistent results. Class certification will eliminate the need for duplicate litigation.

92. Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted, or has refused to act, on grounds generally applicable to the Rule 23 class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

93. Plaintiff will fully and adequately protect the interests of the class. Plaintiff seeks the same recovery as the class, predicated upon the same violations of law and the same damage theory. Plaintiff has retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the class.

## COUNT I
### Violation of the Fair Labor Standards Act
**(Plaintiff on behalf of herself and Similarly Situated Persons—Collective Action)**

94. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

95. The FLSA, 29 U.S.C. § 207, requires employers to pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

96. Plaintiff and the FLSA collective are non-exempt employees entitled to FLSA overtime compensation for all hours worked in excess of forty (40).

97. Plaintiff and the FLSA collective work(ed) in excess of forty (40) hours per week but did not receive overtime compensation.

98. Defendant failed to accurately record the actual hours worked by Plaintiff and the FLSA collective.

99. Defendant failed to compensate Plaintiff and the FLSA collective for the overtime hours they worked.

100. The foregoing conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

101. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and those similarly situated have suffered and will continue to suffer a loss of income and other damages.

## COUNT II
### Violation of the Illinois Minimum Wage Law
**(Class Action)**

102. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

13

103. Pursuant to the Illinois Minimum Wage Law, each employer shall pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

104. Plaintiff and the Rule 23 class are non-exempt employees entitled to overtime compensation for all hours worked in excess of forty (40).

105. Plaintiff and the proposed Rule 23 class work(ed) in excess of forty (40) hours per week, but did not receive the appropriate overtime compensation from Defendant.

106. Defendant unlawfully compensated Plaintiff and the class by paying them a salary.

107. Defendant willfully and intentionally failed to compensate Plaintiff and the rule 23 class for the overtime hours they worked.

108. There is no *bona fide* dispute that Plaintiff is owed overtime wages for the work Plaintiff performed for Defendant.

109. Defendant acted willfully and with reckless disregard of clearly applicable provisions of the IMWL.

110. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the class have suffered and will continue to suffer a loss of income and other damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for the following relief:

    A.    Designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

    B.    Pursuant to 29 U.S.C. § 216(b), prompt issuance of notice to all those similarly situated apprising them of the pendency of this action and permitting them to assert timely FLSA claims by filing individual consent forms.

C. Designation of this action as a class action on behalf of Plaintiff and all members of the proposed state classes;

D. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

E. Judgment that Defendant failed to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA and the IMWL;

F. Judgment that Defendant's violations were willful;

G. An award in an amount equal to Plaintiff's and the similarly situated employees' unpaid back wages at the applicable overtime rate;

H. An award to Plaintiff and those similarly situated for the amount of unpaid wages owed, liquidated damages and other penalties provided by law and interest thereon;

I. An award of prejudgment interest to the extent liquidated damages are not awarded;

J. Pursuant to 29 U.S.C. § 216 and/or other applicable laws, an award of reasonable attorneys' fees and costs to be satisfied in full by Defendant; and

K. All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the FLSA collective request that a jury of their peers hear and decide all possible claims.

Respectfully submitted,

Dated: July 12, 2019

/s/Douglas M. Werman
One of Plaintiff's Attorneys

**THE LAW OFFICES OF PETER T. NICHOLL**
Benjamin L. Davis, III
bdavis@nicholllaw.com
Kelly A. Burgy
kaburgy@nicholllaw.com
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Telephone: (410) 244-7005

**WERMAN SALAS P.C.**
Douglas M. Werman
dwerman@flsalaw.com
Maureen A. Salas
msalas@flsalaw.com
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE FLSA COLLECTIVE CLASS**

16

# EXHIBIT A

## NOTICE OF CONSENT TO BECOME A PARTY PLAINTIFF IN A
## COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT

By my signature below, I represent to the Court that I have been employed by __Paylocity__ and/or their parents, subsidiaries, and affiliated entities within the past three (3) years, that I have worked in excess of forty (40) hours during an individual workweek for the Defendant/s, and that I have not been paid all wages owed to me pursuant to 29 U.S.C. § 201, *et. seq.* I authorize through this Consent the filing and prosecution of this Fair Labor Standards Act action in my name and on behalf of all persons similarly situated to myself.

DocuSigned by:
*Katherine Diebold*
094289B058334E2...
_____          7/12/2019
Signature                            _____
                                     Date


Katherine Diebold
_____
Name of Party Plaintiff        (*Please print your name legibly*)